## BRAUER et al. v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit.   June 2, 1924.)

No. 3082.

1. Conspiracy ⊜43(6)—Indictment held insufficient to charge offense under National Prohibition Act, in view of failure to allege that spirits were fit for beverage purposes.

Indictment charging conspiracy, under Criminal Code, § 37 (Comp. St. § 10201), to manufacture and sell distilled spirits for beverage purposes, *held* insufficient to charge a violation of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼a et seq.), in view of failure to state that the spirits were fit for beverage purposes under title 2, §§ 1, 6, notwithstanding section 32.

2. Criminal law ⊜338(4, 5)—Admission of evidence that a certain person was supposed to have died from drinking wood alcohol held prejudicial error, in view of failure to connect defendants therewith.

In prosecution for conspiracy to manufacture and sell distilled spirits, in which the government offered evidence to prove that the beverage alleged to have been manufactured and sold by defendants contained wood alcohol, admitting of evidence that a certain person had died supposedly from drinking wood alcohol *held* prejudicial error, in the absence of evidence that such person actually died from drinking wood alcohol, or that he died from drinking the spirits made by defendants.

3. Conspiracy ⊜47—Evidence held insufficient to warrant conviction for conspiracy to manufacture and sell liquor and for maintenance of nuisance.

In prosecution for conspiracy to manufacture and sell distilled spirits and for maintenance of nuisance, evidence that certain of defendants, who were detectives, were present from time to time in the garage in which it was claimed that the defendants manufactured the liquor, with nothing to show that they did anything in the conspiracy or in its furtherance, *held* insufficient to warrant conviction of such defendants.

4. Criminal law ⊜374—Testimony that defendant offered to sell whisky held insufficient to warrant conviction of conspiracy to manufacture and sell liquor and of maintenance of nuisance.

Testimony that a defendant offered to sell whisky to witness *held* insufficient to warrant conviction of conspiracy to manufacture and sell liquor and of maintenance of nuisance, in absence of evidence connecting defendant with the liquor alleged to have been manufactured and sold pursuant to the conspiracy.

5. Intoxicating liquors ⊜223(3)—Variance between indictment, charging conspiracy to manufacture and sell "whisky," and proof of the manufacture and sale of liquor containing, but not resembling, whisky, held fatal.

Variance between indictment, charging that defendants maintained a common nuisance, in violation of National Prohibition Act, tit. 2, § 21 (Comp. St. Ann. Supp. 1923, § 10138½jj), in that they "did unlawfully, willfully and knowingly manufacture, sell and keep for sale for beverage purposes, intoxicating liquor containing more than one-half of 1 per cent. by volume, to wit, whisky," and proof of the manufacture of a mixture which contained whisky, but did not resemble whisky any more than it resembled any of the other ingredients, *held* fatal.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Benjamin Brauer and others were convicted of conspiracy to manufacture and sell distilled spirits, and of the maintenance of a common nuisance, and they bring error.   Reversed, and new trial awarded.

Frederic M. P. Pearse and William H. Speer, both of Newark, N. J., and Thomas G. Haight and Edward J. O'Mara, both of Jersey City, N. J. (Daniel W. Applegate, of Newark, N. J., on the brief), for plaintiffs in error.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Walter D. Van Riper, Asst. U. S. Atty., of Newark, N. J.

Before WOOLLEY and DAVIS, Circuit Judges, and MORRIS, District Judge.

WOOLLEY, Circuit Judge. The defendants below were tried and convicted on two counts of an indictment charging, first, conspiracy to manufacture and sell distilled spirits; and second, the maintenance of a common nuisance, contrary to statutes of the United States. The story is a long one, covering the alleged conspiracy and the part each defendant played in the objective offense of manufacturing and selling a concoction made of whisky, alcohol, water, coloring matter and Bead oil. After sentence, they sued out this writ of error.

The first matter assigned as error was the refusal of the trial court to grant the defendants' motion to quash both counts of the indictment. By this motion, in effect a demurrer, made at the opening of the trial, the defendants maintained that the first count is defective in thirteen particulars and the second count in six. They make the same contentions on this writ of error.

Upon the first count we shall limit our discussion, and our decision, to one matter which appears to be decisive. "It is needless to enter into many reasons for quashing a conviction, when one alone is fully sufficient." Lord Mansfield, Rex v. Jarvis, I Burr. part IV, 152.

[1] This is a conspiracy count based on Section 37 of the Criminal Code (Section 5440, R. S.; Comp. Stat. § 10201). It charges all the defendants with conspiring to "manufacture and sell for beverage purposes a large quantity of distilled spirits containing more than one-half of one per centum of alcohol by volume." Here the charging part of the count ends. It then alleges five overt acts and concludes with the customary words, "contrary to the form of (the) statute in such case made and provided." We suppose, the statute which the count charges the defendants with conspiring to violate is the National Prohibition Act. Act of October 28, 1919, c. 85; 41 Stat. 305 (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.). We are constrained to hold the count bad because it fails to state, as the object of the conspiracy, an offense within the statute.

The authority for this statute is the Eighteenth Amendment to the Federal Constitution, which provides:

"After one year from the ratification of this article the manufacture, sale, or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from the United States and all territories subject to the jurisdiction thereof for beverage purposes is hereby prohibited."

Although using some of its terms, for instance, "the manufacture [and] sale" of spirits "for beverage purposes," the count, of course, does not allege a conspiracy to violate this constitutional provision. After the adoption of the Eighteenth Amendment the statute known

as the National Prohibition Act (supra) was enacted to carry the Amendment into effect. This is the "law of the United States" which the count charges the defendants with conspiring to violate. Does it state a case of intended violation? This depends upon whether the offense which the count charges that the defendants had conspired to commit (although not required to be stated with the particularity that would be required in a count charging the offense itself) is sufficiently identified as one within the inhibition of the statute. Williamson v. United States, 207 U. S. 447, 28 Sup. Ct. 171, 52 L. Ed. 278; Anderson v. United States, 260 Fed. 557, 558, 171 C. C. A. 341; Rulovitch v. United States (C. C. A.) 286 Fed. 315, 316, 317. Such identification, to be valid, must be more than casual; it must at least show that the offence which the conspirators contemplated committing is an offence within the terms of the statute they intended to violate.

The objective offence to which the first count of the indictment points as an act prohibited by statute is the manufacture and sale of liquor. Section 6, Title 2. Liquor is defined by Section 1 of Title 2 of the Act as follows:

"When used in Title II and Title III of this Act (I) the word 'liquor' or the phrase 'intoxicating liquor' shall be construed to include alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine, and in addition thereto any spirituous, vinous, malt, or fermented liquor, liquids, and compounds, whether medicated, proprietary, patented, or not, and by whatever name called, containing one-half of one per centum or more of alcohol by volume which are fit for use for beverage purposes: * * * "

In charging conspiracy to violate this law the count alleges, in the words of the statute, the manufacture and sale of distilled spirits "containing more than one-half of one per centum of alcohol by volume:", In pleading only this much of the statute, the count stops short of the offence which the statute defines, in that the statute, while using these words, goes further and prescribes with reference to such liquor that it shall be "fit for use for beverage purposes." This we regard an essential element of the offence which the count charges that the defendants conspired to commit, and in order to identify the offence as one within the statute, this and its other elements must be stated with the certainty, though not with the particularity, required in charging the offence itself. Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419; United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Anderson v. United States, 260 Fed. 557, 558, 171 C. C. A. 341.

By the National Prohibition Act, Congress intended to stop the manufacture and sale of intoxicating liquor of certain kinds and defined the kinds as those which, besides being of a named alcoholic volume, "are fit for use for beverage purposes." It did not make the same inhibition with reference to the maintenance and sale on intoxicating liquors *unfit* for use for beverage purposes. It left the manufacture and sale of such liquors to be met by other laws. So far as disclosed by the uncertain words of the indictment, the defendants may have manufactured and sold such an alcoholic compound "for beverage purposes." Whatever that offence may be—whether a higher crime

calling for heavier penalties—clearly it is not the offence denounced by the National Prohibition Act. It follows, therefore, that the first count fails to identify the objective offence of the conspiracy as one prohibited by statute and, consequently, it fails to charge the defendants with a conspiracy, under Section 37 of the Criminal Code, to commit an offence against the United States.

Nor is the count aided by Section 32 of Title 2 of the National Prohibition Act, which in certain instances makes an indictment sufficient by providing that:

" * * * It shall not be necessary in any * * * indictment to give the name of the purchaser or to include any defensive negative averments, but it shall be sufficient to state that the act complained of was then and there prohibited and unlawful. * * * "

This section authorizes the omission of specified matters from a count charging an offence under the act itself, not under the conspiracy section of the Criminal Code. Rulovitch v. United States (C. C. A.) 286 Fed. 315, 316. Such matters, however, are of a class to which the element of liquor "fit for use for beverage purposes" is not related. Were we, by judicial decision, to enlarge this statutory clause so that it would include an essential element of the objective offence and thereby permit omission of this element from an indictment charging conspiracy, it would amount, we think, to judicial legislation, a practice in which this court never consciously indulges.

In reviewing the testimony on which the defendants base their next assignment specifying error in the court's refusal to grant their motion for a directed verdict, we are rather persuaded that the omission from the count of the essential words "fit for use for beverage purposes" in describing the object of the conspiracy was not an inadvertence on the part of the draftsman but was designedly done in order to make an opening at the trial for the admission of evidence to the effect that the distilled spirits manufactured and sold by the defendants "for beverage purposes," as alleged in the count, were not "fit for use for beverage purposes." That the liquor was not fit for beverage purposes was the Government's main insistence at the trial. With these words in the count an awkward situation would have developed on the proofs, for evidence that the spirits were not fit for such use would scarcely support an allegation that they were fit for such use.

[2] Besides proving the unlawful alcoholic content of the beverage alleged to have been manufactured and sold by the defendants in furtherance of the conspiracy, the Government offered evidence to prove that it contained wood alcohol, and after repeated objections seasonably made, and at those stages of the case properly sustained, the Government succeeded in getting in evidence that one Beam had died supposedly from drinking that poison. Here the Government framed a syllogism. From the major premise that Beam died from drinking wood alcohol and the minor premise that the defendants made a beverage containing wood alcohol, the jury was permitted to draw the conclusion that Beam died from the wood alcohol contained in the defendants' beverage. We think the admission of this testimony was fatally prejudicial to the defendants' case, first, because there was no

evidence that Beam died from drinking wood alcohol; and second, because even if he met his death in this way, there is no evidence that he died from drinking spirits made by the defendants. We are of opinion that on this testimony, improperly admitted because not connected with the defendants, the motion for a directed verdict as to all defendants should have been granted.

[3, 4] We are also of opinion that the motion for a directed verdict made with special reference to Boldt and Flannery should have been granted for still further reasons. These defendants were plainclothes men on the detective force of Jersey City. As to Boldt the only testimony implicating him in the alleged conspiracy, or in the maintenance of a common nuisance, was his presence from time to time in a garage where, it is alleged, the defendants made distilled spirits. There is nothing to show that he said or did anything either in the formation of the conspiracy or in its furtherance. His presence there may or may not have been in the line of his duty. However that may be, it alone is not enough to sustain an inference of guilt. To the same negative effect was the testimony against Flannery with the added statement by one witness, a saloon keeper, that Flannery offered to sell him whiskey. Assuming this to be true, it rather indicates that Flannery offered to sell liquor independently of and in competition with the others, which, without more, does not show complicity in the conspiracy.

Lastly, we come to the question whether the court erred in refusing the defendants' motion to quash the second count of the indictment. Without passing upon the sufficiency, and therefore, upon the validity of this count, it is enough to say that conviction under it cannot be sustained because of a fatal variance between the allegations and proofs.

The count charges that all the defendants, during a period between named dates, in a garage of a given street number, situate in Jersey City, in the District of New Jersey, and within the jurisdiction of the District Court, did, in violation of Section 21 of Title 2 of the National Prohibition Act, unlawfully "maintain a common nuisance in that they did unlawfully, willfully, and knowingly manufacture, sell and keep for sale for beverage purposes intoxicating liquor containing more than one-half of one per centum (sic) by volume, to wit, whiskey."

[5] There is no evidence that the intoxicating liquors which the count charges that the defendants manufactured, sold and kept for sale on the premises was whiskey. Therefore this allegation of an essential element of the offence is not sustained by proof. True, in the mixture described in the first count, whiskey was one of a number of ingredients; but the mixture no more resembled whiskey than it resembled any one of the other ingredients. It was not whiskey.

The draftsman of this count was free to select as a name for the concoction any appropriately descriptive term from the list supplied by Section 1 of Title 2 of the act. And evidently this is what he did. He selected "whiskey." Whiskey is a commodity of known chemical composition; its name, since the passage of the National Prohibition Act, has acquired a certain legal signification when used in indictments.

Schliefer v. United States (C. C. A.) 288 Fed. 370; Singer v. United States (C. C. A.) 278 Fed. 415, 418. Having so used it in this indictment and having charged that it was the thing unlawfully manufactured, kept and sold on the premises, the Government must, of course, prove the charge as made. This it has not done.

"A conviction must be good in all its parts; the indictment must be supported by the evidence, and the judgment must be supported by both." King v. Solomons, 1 T. R. 251. Lacking these qualities,—fundamental in the administration of justice,—we are constrained to reverse the judgment below as to all defendants on both counts of the indictment and direct that a new trial be awarded.