RENDELL, Circuit Judge,
with whom SCIRICA, CHAGARES and HARDIMAN, Circuit Judges, join— dissenting.
The majority concludes that 18 U.S.C. § 371, read plainly and naturally, creates one offense, because the use of the words “either” and “or” demonstrates that “these objects provide alternative means of committing a single type of offense rather than creating separate offenses.” Maj. Op. Section II.A. 1 ¶ 13. I suggest that the plain, natural reading is that § 371 creates separate offenses.
First, the statutory phrases typically used to set forth “alternative ways” of committing one crime are quite unlike § 371. Characteristically, they are a string of “alternative routes to a conviction” purposely included lest some conduct that is intended to be criminalized is omitted. United, States v. Navarro, 145 F.3d 580, 586 (3d Cir.1998). In Milanovich v. United States, the Supreme Court held that an individual cannot be convicted and cumulatively sentenced for both stealing property and receiving the same stolen property under 18 U.S.C. § 641 because, in adding the “receiving” clause to the statute, “Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the robbers themselves.” 365 U.S. 551, 554, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961) (internal quotation marks omitted). In Navarro, we held that the three mental states in a statute (intent to promote, knowing concealment, and knowing avoidance) did not create three separate offenses, but were three alternative ways to commit the same offense. 145 F.3d at 585. In United States v. Yeaman, we held that engaging in a scheme to defraud, obtaining money by a material misrepresentation, and conducting a transaction that operates as a fraud on a purchaser are alternate means of committing a single offense, not separate offenses. 194 F.3d 442, 453-54 (3d Cir.1999). We noted that the statute at issue in Yeaman did not cover “many different kinds of behavior of varying degrees of seriousness.” Id. at 454 (internal quotation marks omitted). In United States v. Oliver, the Court of Appeals for the Seventh Circuit found that, for purposes of a statute criminaliz *220 ing the receipt of “any firearm or ammunition,” firearms and ammunition are interchangeable and the receipt of both at the same time cannot create two separate offenses. 683 F.2d 224, 232-33 (7th Cir.1982). In each of these instances, the alternative language sets forth similar conduct integrally related so as to encompass all possible modes of commission of the same crime. The two phrases of § 371 at issue here do not fit this pattern; they do not encompass similar, related conduct but set forth distinct offenses as defined by the Supreme Court.
The Supreme Court has recognized on several occasions since this statute was first conceived[1] that the “offense” and “defraud” provisions set forth very different crimes. In United States v. Hirsch, the Supreme Court described the predecessor statute to 18 U.S.C. § 371 as including “every form of conspiracy against the United States, and every form of conspiracy to defraud them.” 100 U.S. 33, 35, 25 L.Ed. 539 (1879) (emphasis added). The Court further defined these conspiracies as “crimes,” “which are punishable under [the statute].” Id. The Hirsch Court stated, “[t]he conspiracy here described [in the statute] is a conspiracy to commit any offence against the United States. The fraud mentioned is any fraud against them. It may be against the coin, or consist in cheating the government of its land or other property. The offence may be treason ....” Id. The very different nature of the two offenses demonstrates that they are clearly not mere “alternative routes” to a single conviction.
When discussing the defraud clause, the Supreme Court has said:
To conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest.
It is true that words ‘to defraud’ as used in some statutes have been given a wide meaning, wider than their ordinary scope. They usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching. They do not extend to theft by violence. They refer rather to wronging one in his property rights by dishonest methods or schemes. One would not class robbery or burglary among frauds.
Hammerschmidt v. United States, 265 U.S. 182, 188, 44 S.Ct. 511, 68 L.Ed. 968 (1924).
The Supreme Court has explained that the statutory language in the “specific [defraud] clause of § 371 ... reaches any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.” Dennis v. United States, 384 U.S. 855, 860-61, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966) (emphasis added). In contrast, to establish a conspiracy to commit an offense against the United States, the gov *221 ernment need not prove that the United States or an agency was the intended victim of the conspiracy, but only that there was a conspiracy to violate a United States law. United States v. Falcone, 960 F.2d 988, 990 (11th Cir.1992) (en banc). The substantive offense in the offense clause need not be criminal but must be “prohibited in the interest of the public policy of the United States” and punishable “by suit for penalty.” United States v. Hutto, 256 U.S. 524, 528-29, 41 S.Ct. 541, 65 L.Ed. 1073 (1921).[2] The contrast between these two crimes is radically different from the contrast in conduct in statutes found to contain “alternatives.” Indeed, in the latter, there is no contrast at all, as the phraseology connotes similarity and all-inelusiveness, not dissimilarity and distinctiveness.
Second, the fact that the use of the disjunctive generally sets forth alternatives does not really dictate that the two provisions of § 371 do not set forth separate crimes. The two provisions at issue effectively say if you conspire to do A, or, if you conspire to do B, you will be punished. The real issue is whether Congress intended to punish only once under § 371 for an agreement to do A and B, or did it intend that even if you were tried, convicted, and punished for conspiring to do A, you could also be tried, convicted, and punished later for conspiring to do B? I suggest that Congress intended the latter, but, in any event, the “either ... or” language does not dictate the former.
The majority’s reliance on cases in which courts engaged in a duplicity analysis ignores the fact that a count does not necessarily violate principles against duplicity just because it contains allegations that could have been stated as separate offenses. “[A] single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses, but only when the failure to do so risks unfairness to the defendant.” United States v. Root, 585 F.3d 145, 155 (3d Cir.2009). A finding that charging violations of the offense and defraud clauses in one count is not impermissibly duplicitous does not then, mean, a fortiori, that they are not separate offenses. Accordingly, courts have held that a single indictment count charging violations of the “offense” and “defraud” clauses — if framed with adequate specificity— would enable determination of the “convicted” offenses and thus would not be impermissibly duplicitous.[3]
*222 The double jeopardy inquiry, by contrast, focuses on whether a later prosecution entails the double punishment prohibited by the Constitution. The overriding issue is not whether a specific indictment count speaks with the requisite lucidity, enabling precise determination of the jury’s findings, but rather whether Congress intended to impose multiple punishments for violation of distinct statutory provisions. And, here, considering the obvious difference between the two types of conspiracies alleged and their implications for purposes of sentence, surely it did. These fundamentally distinct inquiries preclude rote application of duplicity precedents to the double jeopardy context.
While the majority employs various modes of analysis to support reading the statute as it does — drawing on cases involving duplicity and canons of construction — I come back to the essential question as to congressional intent and believe it unimaginable that Congress did not intend to punish separately the two distinct types of conspiracies set forth in § 371 — as have two of the three courts of appeals to have considered this issue.[4] WTiy would Congress separate out the defraud clause if it was not intended to mean something different? [5]
Congressional intent to impose separate punishments is “reinforced” where the two conspiracy provisions address separate evils. Albernaz v. United States, 450 U.S. 333, 343, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). Clearly, these provisions do. The “defraud” clause focuses narrowly on conspiracies targeting the federal government. See United States v. Brandon, 17 F.3d 409, 422 (1st Cir.1994); Falcone, 960 F.2d at 990 (11th Cir.1992); United States v. Thompson, 814 F.2d 1472, 1476-77 (10th Cir.1987). The “offense” clause aims to protect the public generally. Brandon, 17 F.3d at 422. Accordingly, its applicability does not hinge on the identity of the target, which need not be the federal government. Id. Nor does the “offense” clause require proof of interference with government operations. Rather, it broadly embraces conspiracies aimed at violating any federal law. Id.; Hirsch, 100 U.S. at 35-36. Clearly, prohibiting agreements to interfere with governmental agencies and prohibiting agreements to violate United States laws address “diverse societal harms.” Albernaz, 450 U.S. at 343, 101 S.Ct. 1137. They are directed at different evils. The majority casts this indicator aside and also dismisses the applicability of the classic double jeopardy test set forth in Blockburger v. United States, which also reinforces congressional intent regarding separate punishments. 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).[6]
*223 Examining this apparent intent, as well as the relevant Supreme Court jurisprudence regarding this statute, and the “evils” and “elements” tests for double jeopardy under Albernaz and Blockburger, respectively, I can only conclude that the “defraud” and “offense” provisions are not different ways of committing the same crime, but, instead, set forth different crimes. Accordingly, resort to United States v. Liotard is not necessary. 817 F.2d 1074 (3d Cir.1987). There simply is no issue of double jeopardy.
I would accordingly affirm the District Court’s order and permit the prosecution for conspiracy to commit tax evasion to proceed.

. In Haas v. Henkel, the defendants were charged with conspiring to defraud the United States (obtaining secret government information) and conspiring to commit an offense against the United States (using bribery to obtain the information). 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569 (1910). The Haas Court found that the indictment properly charged a conspiracy to defraud the United States because "such a conspiracy [need not] contemplate a financial loss,” but need only have as its purpose "impairing, obstructing, or defeating the lawful function of any department of government.” Id. at 479, 30 S.Ct. 249. The Court also found that the indictment properly charged a conspiracy to commit an offense against the United States because it is a crime to bribe any government official "to do any act in violation of his lawful duty.” Id. at 480, 30 S.Ct. 249.

. See United States v. Williams, 705 F.2d 603, 624 (2d Cir.1983) (finding that one count alleging a conspiracy to defraud the United States and to commit various substantive offenses was not duplicitous because the conspiracy allegations were specific); United States v. Wiley, 979 F.2d 365, 367-68 (5th Cir.1992) (finding that one count charging a conspiracy to defraud the United States and to commit an offense against the United States was not duplicitous because it cited "the two underlying statutes which [the defendant] is charged with conspiring to violate and list[ed] ten overt acts in furtherance of the conspiracy”).

. The Court of Appeals for the Eighth Circuit found with little discussion (in the context of double jeopardy, not duplicity) that § 371 “plainly establishes two offenses.” United States v. Ervasti, 201 F.3d 1029, 1039 (8th Cir.2000). In United States v. Thompson, the Court of Appeals for the Tenth Circuit also found that double jeopardy does not bar prosecutions for conspiracy to commit mail fraud and conspiracy to defraud the United States under § 371. 814 F.2d 1472, 1476-77 (10th Cir.1987). But see United States v. Smith (David L.), 424 F.3d 992, 1000 (9th Cir.2005) (declining to apply Blockburger to assess double jeopardy because all of the conspiracy counts at issue alleged a violation of the same statute, § 371).

. Congress also separated out the defraud clause for statute of limitations purposes. Congress created a specific six-year statute of limitations “for offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not.” 26 U.S.C. § 6531.

. Blockburger is "employed to ascertain whether the inference that [the legislature] intended multiple punishments is a reasonable one. If the Blockburger test is satisfied, it *223 may be presumed that multiple punishments are authorized.” United States v. Xavier, 2 F.3d 1281, 1291 (3d Cir.1993) (quoting United States v. Maldonado-Rivera, 922 F.2d 934, 981 (2d Cir. 1990)). It is undisputed that the Blockburger test supports the inference that Congress intended the provisions in § 371 to create separate offenses because each requires proof of an element which the other does not. Maj. Op. n. 9. The District Court opinion by Judge Jones conducts a thorough analysis of the "offense” and “defraud” provisions under Blockburger and Albemaz. United States v. Rigas, 565 F.Supp.2d 620 (M.D.Pa.2008). I need not repeat it here.