United States Court of Appeals,

Eleventh Circuit.

No. 95-3335.

UNITED STATES of America, Plaintiff-Appellee,

v.

Steven Dennis GOLDSMITH, Defendant-Appellant.

April 8, 1997.

Appeal from the United States District Court for the Northern District of Florida. (No. 95-03025-RV), Roger Vinson, District Judge.

Before EDMONDSON and BLACK, Circuit Judges, and RONEY, Senior Circuit Judge.

PER CURIAM:

On this appeal, the defendant argues that his conduct—proven by the Government and to which he admits—did not violate the federal bank fraud criminal statute. We hold that it did, and therefore affirm the judgment of conviction based on a jury verdict.

Defendant Steven Dennis Goldsmith was convicted by a jury on all counts of a 23-count indictment charging him with a violation of 18 U.S.C. § 1344, which makes it a crime to knowingly execute a scheme to defraud a financial institution or to obtain money from a financial institution by means of false or fraudulent pretenses or representations. The "scheme" in this case involved 23 vehicles that Goldsmith purchased with bank financing and then sold without remitting the proceeds to the bank. Defendant admits that he was wrong in commingling these funds but has consistently denied any intent to defraud the bank, arguing that his conduct was at worst a breach of contract, a business transaction gone bad. Thus, the

facts, uncontroverted on this appeal, must be examined in light of the meaning of bank fraud under section 1344.

The bank fraud statute has two parts. [1] Section 1344(a)(1) requires the Government to prove that the defendant (1) intentionally participated in a scheme or artifice to defraud another of money or property; and (2) that the victim of the scheme or artifice was an insured financial institution. *United States v. Stavroulakis,* 952 F.2d 686, 694 (2d Cir.1992). Section 1344(a)(2) requires the Government to establish three elements: (1) that a scheme existed in order to obtain moneys, funds or credit in the custody of the federally insured financial institution; (2) that the defendant participated in the scheme by means of false pretenses, representations or promises, which were material; and (3) that the defendant acted knowingly. *United States v. Falcone,* 934 F.2d 1528, 1539-40 (11th Cir.1991), *modified in part,* 960 F.2d 988 (11th Cir.), *cert. denied,* 506 U.S. 902, 113 S.Ct. 292, 121 L.Ed.2d 216 (1992); *United States v. Swearingen,* 858 F.2d 1555, 1556 (11th Cir.1988), *cert. denied,* 489 U.S. 1083, 109 S.Ct. 1540, 103 L.Ed.2d 844 (1989).

---

[1]The version of 18 U.S.C. § 1344 in effect when the defendant was indicted states in pertinent part:

> (a) Whoever knowingly executes, or attempts to execute, a scheme or artifice—
>
> > (1) to defraud a financial institution; or
> >
> > (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises shall be fined not more than $10,000 or imprisoned not more than five years, or both.

To satisfy either of these two subsections, the Government must prove specific intent to defraud. *See United States v. Medeles,* 916 F.2d 195, 198 (5th Cir.1990). Under subsection (a)(1), however, the Government is not required to establish misrepresentation on the part of the defendant. *Medeles,* 916 F.2d at 198.

The indictment charged Goldsmith under both provisions of section 1334(a), so we must determine if his conduct amounts to a violation under either subsection. *United States v. Briggs,* 939 F.2d 222, 225 (5th Cir.1991), *cert. denied,* 506 U.S. 1067, 113 S.Ct. 1016, 122 L.Ed.2d 163 (1993). If evidence presented at trial is sufficient to prove either theory of bank fraud, the case may be submitted to the jury. Where the indictment and instructions to the jury charge both clauses of the statute, as was done in this case, the defendant's conviction may be sustained under either clause. *Briggs,* 939 F.2d at 225.

The evidence supports the Government's argument that defendant violated the first section of the bank fraud statute with the scheme to defraud the bank and to obtain money that rightfully belonged to the bank for his own account.

For the basic facts, we can look at the indictment. The defendant essentially concedes on this appeal that the Government proved the basic facts alleged in the indictment, but argues that those facts do not prove a violation of either subsection of 1344(a). Paraphrasing the indictment, it alleges as follows:

1. Goldsmith was president of both Sunbelt Assurance Corporation (SAC), which provided purchaser's automobile financing, and The Auto Bank, which sold automobiles repossessed by SAC.

2. Goldsmith, doing business as SAC, obtained a line-of-credit from Citizens and Builders (C & B), a federally insured financial institution, to fund automobile loans. Citizens and Southern Trust Company served as escrow agent on behalf of C & B and SAC for the disbursement of funds against the line of credit and for the deposit of money collected on the automobile loans.

3. After the loan was established, SAC would be listed as the lienholder, would maintain insurance on the collateral, and would service the loans by collecting the monthly loan payments and depositing them in the Citizens and Southern escrow account. SAC would then cause the escrow funds to be paid to C & B to apply to the line-of-credit. SAC was paid a fee for servicing the loans.

4. SAC was responsible for reporting to C & B the status of the individual automobile loans through a "Portfolio Remittance Report."

The indictment then alleged that Goldsmith executed the following scheme to defraud the C & B:

5. Goldsmith, through SAC, repossessed 23 automobiles on defaulted loans, sold the automobiles through the Auto Bank, and converted the proceeds to his own use without informing C & B of the defaults or forwarding the proceeds to the bank.

6. To conceal the loan default, repossession, subsequent sale, and conversion of the proceeds, Goldsmith falsified the "Portfolio Remittance Report" to make it appear that the automobile loans were merely delinquent and not yet the subject of repossession.

7. The indictment then contained a chart of each individual borrower, and the date each vehicle was sold, and the amount received by Auto Bank/SAC and converted to Goldsmith's personal use. The 23 separate dates went from April 1989 to October 1990, with no sales some months, and one month with 5 sales. Two months intervened between the first sale, and the second.

Defendant argues on appeal that "the conduct of which defendant stands convicted, at worst, constitutes a breach of contract, not a violation of 18 U.S.C. section 1344(a)." He contends that he had no fraudulent intent, and that the "government has impermissibly obtained defendant's conviction by misrepresenting the evidence in its argument and, thus, convincing

the jury to convict him because his business plan failed, not because he defrauded the bank."

This argument overlooks the significance of the falsification of the "Portfolio Remittance Report." If, along with the conversion as recited above, he had honestly reported to the bank that the collateral had been sold and he simply failed to pay the bank the proceeds, it would be difficult to infer fraudulent intent. But that is not what he did. As alleged in the indictment, he falsely reported that the loan was still collateralized, thus enabling him to repeatedly sell automobiles and pocket the proceeds without detection by the bank. This evidence was sufficient to support a finding by the jury that Goldsmith intentionally pursued a scheme to defraud the bank to obtain funds for his own use that rightfully belonged to the bank. The jury may well have been unable to establish a reason for the false reports other than that Goldsmith intended to defraud the bank.

In his brief, the defendant attempts to disconnect himself from the reports, but a review of the record reflects sufficient evidence for the jury to find that he was knowingly responsible for furnishing the bank with false information.

The defendant cites *United States v. Briggs,* 939 F.2d 222 (5th Cir.1991), as the best case that supports his position. But in *Briggs,* the defendant was not accused, the Government did not argue, and the court did not decide whether the scheme in question violated subsection (a)(1). 939 F.2d at 225 n. 7. Thus *Briggs* is inapplicable to this case. Defendant has provided us with no case

that supports his argument on this appeal.

AFFIRMED.